Citation Nr: 1522713 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 12-36 126 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for sleep apnea. 

2. Entitlement to service connection for a skin disability.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

T. Matta, Associate Counsel





INTRODUCTION

The appellant is a Veteran who served on active duty from August 1996 to August 1999. These matters are before the Board of Veterans' Appeals (Board) on appeal from January 2011 and June 2011 rating decisions of the St. Petersburg Department of Veterans Affairs (VA) Regional Office (RO), which, respectively, denied service connection for sleep apnea and a skin disability.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action on his part is required.


REMAND

A preliminary review of the record found that further development is necessary to meet VA's duty to assist the Veteran in developing evidence to substantiate his claims. 

Sleep Apnea

The Veteran's theory of entitlement to service connection for sleep apnea is primarily one of secondary service connection. He contends that his sleep apnea is secondary to his service-connected asthma. 

On September 2010 VA respiratory examination, severe obstructive sleep apnea was diagnosed. During the examination, the Veteran reported that his sleep apnea began in service. Finding that asthma does not cause the pathophysiology required for sleep apnea, the examiner opined that sleep apnea was not due to his service-connected asthma. 

While the Board notes that the Veteran's sleep apnea may not be due to his service-connected asthma, he can still establish service connection by showing that his disability is directly related to service. See Robinson v. Shinseki, 557 F.3d 1355 (Fed. Cir. 2009) (Board is required to consider all theories of entitlement, raised either by the claimant or by the evidence, as part of the non-adversarial adjudication process). Because the examiner did not address whether the Veteran's sleep apnea is related directly to his service/was incurred therein, the examination is inadequate for rating purposes, and another examination is necessary. Once VA undertakes the effort to provide an examination, it must provide an adequate one. See Barr v. Nicholson, 21 Vet. App. 303 (2007). 

Skin Disability

On May 1996 service entrance examination, the Veteran's skin was abnormal on clinical evaluation, with a notation of "active on back." His service treatment records show numerous skin complaints/diagnoses. In August 1996, he complained of an itching rash on his entire back with a one-week history; a heat rash on the chest and back was diagnosed. Dermatitis was diagnosed one week later after tiny pustules were seen on his upper arms, shoulders, chest, back, abdomen, and face. During a follow-up appointment, folliculitis was diagnosed. In the following days, separate diagnoses of a non-acute rash and "rash type unknown" were made. In October 1996, a chronic follicular rash was diagnosed, with unknown etiology. During later treatment, it was noted that his eruption onset was during boot camp. Widespread follicular papules and pustules were noted on his abdomen and back and folliculitis was diagnosed. In June 1999, he complained of a rash on his trunk; probable contact dermatitis with heat compound was diagnosed. In a June 1999 service separation report of medical history, he endorsed a history of skin disorder, identifying an irritation on his back. The physician noted acne, considered nondisabling. 

On May 2011 VA skin diseases examination, folliculitis, resolved, and neurodermatitis, non-active, were diagnosed. The examiner concluded that the Veteran's current skin condition is not caused by his active duty diagnosed condition because the last record regarding his acne was in 1996 and because there is no documentation indicating that the rash he had in 1996 continued to the present acne/dermatitis. The examiner further stated that acne is a temporary condition, as evidenced by the 1999 service separation examination which was silent for acne, and that his current dermatitis is not a progression of his active duty condition. The Board finds that the opinion is premised on inaccurate factual assumptions as the Veteran complained of a rash on his trunk in June 1999 and endorsed "skin diseases" in a June 1999 separation report of medical history; at which time acne was clinically noted. Accordingly, another VA examination is necessary to secure an adequate medical advisory opinion is necessary.

Accordingly, the case is REMANDED for the following:

1. The AOJ should secure for association with the record copies of the outstanding clinical records of all VA treatment the Veteran has received for sleep apnea and a skin disability (i.e., update to the present the records of his VA treatment for such disabilities).

2. The AOJ should then arrange for the Veteran to be examined by an appropriate physician to determine the likely etiology of his sleep apnea. The record must be reviewed by the examiner in conjunction with the examination. Based on interview and examination of the Veteran and review of his record, the examiner should provide opinions that respond to the following:

Please identify the likely etiology of the Veteran's sleep apnea. Specifically, is it at least as likely as not (a 50% or better probability) that such was incurred in, or is directly related to, service? If the answer is no, identify the etiology considered more likely.

The examiner should explain the rationale for all opinions, citing to supporting factual data and medical literature as deemed appropriate, and acknowledge the Veteran's lay report of onset in service (i.e., account for it in the opinion). 

3. The AOJ should arrange for the Veteran to be examined by a dermatologist to determine the nature and likely etiology of his skin disability. The record must be reviewed by the examiner in conjunction with the examination. Based on interview and examination of the Veteran and review of the record, the examiner should provide opinions that respond to the following:

(a) Identify (by diagnosis) each skin disability entity found. 

 (b) Identify the likely etiology for each skin disability entity diagnosed. Specifically, is it at least as likely as not (a 50% or better probability) that such disability was incurred or aggravated (increased in severity during) in service?

The examiner must explain the rationale for all opinions, citing to supporting factual data

4. The AOJ should then review the record and re-adjudicate the claims. If either remains denied, the AOJ should issue an appropriate supplemental statement of the case and afford the Veteran and his representative the opportunity to respond. The case should then be returned to the Board, if in order, for further review.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). 




These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


_________________________________________________
GEORGE R. SENYK
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).